**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                                   |     |                         |
|-----------------------------------|-----|-------------------------|
| **UNITED STATES OF AMERICA**      | :   | **Case No.: 1:21-cr-195-TFH** |
|                                   | :   |                         |
| **v.**                            | :   |                         |
|                                   | :   |                         |
| **DEBORAH SANDOVAL and**          | :   |                         |
| **SALVADOR SANDOVAL, JR.,**       | :   |                         |
|                                   | :   |                         |
| **Defendants.**                   | :   |                         |
|                                   | :   |                         |

## UNITED STATES' TRIAL BRIEF

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence at trial and various legal issues likely to be brought before the Court.

## I.     THE JANUARY 6 CAPITOL RIOT AND THE DEFENDANT'S ACTIONS

On January 6, 2021, thousands of people descended on the U.S. Capitol building and grounds when a joint session of Congress had convened to certify the votes of the Electoral College for the 2020 Presidential Election. Vice President Michael Pence, as the President of the Senate, was there to preside over the joint session and, later, the Senate proceedings. On that day, physical barriers surrounded the U.S. Capitol building and grounds. At all relevant times, the United States Capitol building and its grounds—including the Senate Wing Doors on the northwest side of the Capitol, the eastern stairs leading to the Capitol Rotunda, the terrace outside the Rotunda doors, and the entire Capitol building itself—were closed to members of the public.

The defendants, Deborah Sandoval and Salvador Sandoval Jr. (hereafter referred to as "Salvador Sandoval"), were among the group of rioters who illegally entered the U.S. Capitol grounds, and then the Capitol building, that day. Deborah Sandoval entered the Capitol on the northwest side of the building, through the Senate Wing Door at approximately 2:49 p.m. Eastern

Standard Time (EST). Deborah Sandoval remained in the Capitol for approximately 25 minutes. While present in the Capitol, she videotaped and took photographs of herself and other rioters in the vestibule inside the Senate Wing Doors, in the Crypt, in Senator Jeff Merkley's Office, and yelled, "Get her ass out here" as she paraded through the Capitol. Through her conduct, the defendant violated 18 U.S.C §§ 1752(a)(1) and 1752(a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and 5014(e)(2)(G).

Salvador Sandoval entered the Capitol through the east side of the building, through the East Rotunda Door at approximately 3:15 p.m. EST. Once inside the Capitol, Salvador Sandoval went directly into the Rotunda. While inside the Rotunda, Salvador Sandoval obstructed and impeded MPD officers in their official duties as he struggled with Metropolitan Police Department (MPD) Officer Martha Lazo over the police shield she was using to control the rioters. Salvador Sandoval then entered the vestibule between the Rotunda and the Rotunda Doors where he assaulted or impeded several other officers from MPD and the United States Capitol Police (USCP) Department. After approximately 15 minutes inside the Capitol, Salvador Sandoval left the Capitol Building at approximately 3:30 p.m. Through his conduct, the defendant violated 18 U.S.C. §§ 231 (a)(3), 18 U.S.C. §§ 111(a)(1), 18 U.S.C. §§ 1512(c)(2), 18 U.S.C §§ 1752(a)(1) and 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D), 5014(e)(2)(F), and 5014(e)(2)(G).

## II.    THE GOVERNMENT'S PROOF

With this filing, the government aims to streamline the presentation of evidence in the trial and focus the legal issues before this Court. To prove the general events that took place during the riot, the government will call Lieutenant Maria Willis from the USCP who will provide an overview of the Capitol building and grounds and set the stage for what occurred there on

January 6, 2021. Video evidence will show what occurred as the Capitol grounds and building were breached.

To prove and to contextualize these defendant's conduct during the riot, the government plans to call five additional witnesses: the two FBI investigators and three MPD officers who were assisting USCP to clear and secure the Capitol Rotunda of rioters while Salvador Sandoval was present therein. This presentation will prove the charged offenses beyond a reasonable doubt.

### A.  Trial Stipulations

The government and defendants have reached stipulations to the following facts which all parties agree are not in dispute.  These stipulations include: (1) that on January 6, 2021, officers from the USCP on the U.S. Capitol grounds and in the U.S. Capitol building were engaged in their official duties as officers or employees of the United States, and that MPD officers on the U.S. Capitol grounds and in the U.S. Capitol building were assisting officers from the USCP; (2)  a description of the Capitol Building and Grounds, that the Certification of the Electoral College Vote was taking place on January 6, 2021, and a timeline of the certification of the Electoral College Vote; (3) the operation and maintenance of closed-circuit video (CCTV) monitoring and recording equipment utilized by the USCP on January 6, 2021, and that the CCTV footage submitted by the government is authentic; (4) the defendants' identities; (5) that the government's exhibits related to cellphone evidence from Deborah Sandoval and Salvador Sandoval's cellphones are accurate and authentic copies of digital content extracted from Deborah Sandoval and Salvador Sandoval's cellphones; (6) that the civil disorder on the Grounds of the U.S. Capitol and in the U.S. Capitol building on January 6, 2021, adversely affected a federally protected function and also obstructed, delayed or adversely affected commerce or the movement of any article or commodity in commerce. The parties further stipulate that the impact on commerce, in particular to the grocery chain Safeway's sales, was that Safeway's District of Columbia stores made

between 18% and 47% less in sales to the public on January 6, 2021, than they had been projected to make that day.

### B.  Testimony from FBI and MPD Witnesses

The government will present testimony from FBI Washington Field Office Agent Sean Millett. Agent Millett has investigated several January 6th cases and worked with a local Task Force Officer, Eric Lopez from the FBI's Omaha Field Office, in investigating Deborah and Salvador Sandoval. Throughout his investigation of the Sandovals, Agent Millett has reviewed USCP CCTV footage, MPD Body Worn Camera (BWC) footage, private citizen recordings, and publicly available open-source video of Deborah and Salvador Sandoval. The government will also present testimony from TFO Lopez  regarding the search of the defendants' cellular devices, social media accounts, and the defendants' residences.

The government will also present testimony from three MPD Officers: Officer Martha Lazo, Officer Kyle Gatewood, and Officer Eddie Choi. Each of these officers were either victims of the assaults committed by Salvador Sandoval or witnessed these assaults. They will testify about their interactions with rioters inside the Capitol building on January 6, 2021. Collectively, these officers will describe how the rioters' presence and actions generally, and Salvador Sandoval's actions specifically, obstructed and impeded their ability to protect the Capitol building and the protected parties inside the Capitol on that day.

### 1.  Deborah Sandoval's Conduct

The investigation into Deborah Sandoval began when the FBI received information that she had posted repeatedly on a private Facebook messenger group chat labeled "Trump Train." In this chat, Deborah posted pictures and a video of herself and others during the riots at the U.S. Capitol on January 6, 2021.

Pursuant to a search warrant, the FBI obtained private messages that Deborah Sandoval sent on Facebook before and after the riot on January 6, 2021. Leading up to January 6, Deborah Sandoval sent private messages to several users about traveling to Washington, D.C. on January 6, 2021. **Exhibit 306.2 and Exhibit 306.28** are two of these private messages (both sent on December 21, 2020) as received from Facebook pursuant to the search warrant.

**Facebook Private Message on 2020-12-21T11:44:13Z**

| From | - ID Number: 1527282918 Facebook<br>Username(s): Deborah Sandoval, Deborah3angels | Images |
|------|-----------------------------------------------------------------------------------|--------|
| To | - ID Number: 100007974286221 Facebook<br>Username(s): Sebastian S Sandoval-Wignall | |
| Text | Hey we're going back to Washington January 6 Trump has called all patriots If the electors don't elect we will be forced into civil war China has infiltrated our government thru Biden and they are waiting to attack | |
| Flagged? | yes | |
| Source | FB_SW_records.pdf: (p15253), FB_SW_records.pdf: (p9272), FB_SW_records.pdf: (p3730) | |
| Properties | - Case Number: 266O-OM-3378196-DEBORAH SANDOVAL<br>- Identification Number: THREAD ID 10204397922577951 FACEBOOK | |

**Exhibit 306.2**

**Facebook Private Message on 2020-12-21T04:07:19Z**

| From | - ID Number: 1527282918 Facebook<br>Username(s): Deborah Sandoval, Deborah3angels | Images |
|------|-----------------------------------------------------------------------------------|--------|
| To | - ID Number: 100000055496729 Facebook<br>Username(s): Allean DuShane | |
| Text | We're going to Washington again January 6 Trump has called on all Republicans and American Patriots | |
| Flagged? | yes | |
| Source | FB_SW_records.pdf: (p11468), FB_SW_records.pdf: (p16461), FB_SW_records.pdf: (p4292) | |
| Properties | - Case Number: 266O-OM-3378196-DEBORAH SANDOVAL<br>- Identification Number: THREAD ID 10204832518162569 FACEBOOK | |

**Exhibit 306.28**

**Exhibit 305.10** is a photograph from Deborah Sandoval's phone taken at 7:06:23 a.m. in front of a D.C. bar, "Kraken. In this photograph, Deborah is photographed with the man that was seen entering the Capitol with her and another woman. Deborah Sandoval is circled in red.



**Exhibit 305.10**

**Exhibit 305.11** is a photograph from Deborah Sandoval's cellphone of her and a man that was seen entering the Capitol building with her. According to metadata from her phone, this photograph was taken at 8:55:20 a.m.



**Exhibit 305.11**

**Exhibit 305.2** is a photograph from Deborah Sandoval's phone taken at the "Peace Monument" located at Pennsylvania Avenue NW and 1st Street NW, at 2:09:55 p.m.



**Exhibit 305.2**

**Exhibit 612** is an approximation of the restricted perimeter as was determined by the USSS and USCP on January 6, 2021. This perimeter was restricted due to Vice President Pence and his families presence at the Capitol that day due to the Electoral College Vote.



**Exhibit 612**

In **Exhibit 612**, the Peace Monument which is depicted in **Exhibit 305.2** is highlighted with a yellow circle. The Senate Wing Doors, where Deborah Sandoval entered the Capitol building, are approximately marked with a red "x" on **Exhibit 612**.

Through open-sourced publicly available photos and videos recovered from rioters and news outlets following January 6, 2021, Lieutenant Willis will be able to show what Deborah Sandoval likely encountered during her travel from the Peace Circle to the Senate Wing Doors on January 6, 6021. Specifically, between 2:09:55 p.m. and the time that Deborah Sandoval entered the Capitol building through the Senate Wing Doors at 2:49:47 p.m., Deborah Sandoval would have to pass through police lines, over fencing and "area closed" signage as depicted in **Exhibit 605.1**, or over bike racks[1] and "area closed" signage as depicted in **Exhibit 605.5**.



**Exhibit 605.1**

---

[1] Bike racks are metal fencing which resembles a bicycle rack.



**Exhibit 605.5**

If the bike racks were already torn down by other rioters when Deborah traveled between the Peace Monument and the Senate Wing Doors, Deborah Sandoval still would have observed fencing, bike racks, and signage that had been torn down as is depicted in **Exhibit 605.6** and other debris as is depicted in **Exhibit 605.7.**



**Exhibit 605.6**



**Exhibit 605.7**

Finally, as she approached the Senate Wing Door, she would have seen damaged windows near the Parliamentarian's Door as is depicted in **Exhibit 605.8** and damage to the windows and doors surrounding the Senate Wing Door.



**Exhibit 605.8**

**Exhibit 113.1** is a screenshot of an open-source video showing the broken glass on the Senate Wing Doors that Deborah Sandoval entered through. In the open-source video (**Exhibit**

**109**) the alarms from the doors can be heard and were going off before, during, and after her entry into the Capitol.



**Exhibit 108.1**

In the CCTV and several photos taken by Deborah Sandoval on the January 6, 2021, Deborah was carrying and sometimes draped in an American flag, wearing a dark winter hat, a hooded jacket, and a red sweatshirt with white lettering. **Exhibit 305.22** is a photo of Deborah Sandoval outside of the Capitol on January 6, 2021. Pursuant to a search warrant for her digital devices recovered from her home, Deborah Sandoval's cellphone, an Apple iPhone 7 Plus, was searched. Several photographs were recovered from Deborah Sandoval's cellphone. These cellphone records also contain metadata from the phone, which provides information as to when the photos were taken. Through this metadata it was revealed that this photograph was taken at 2:09:50 p.m., before she entered the Capitol building.



**Exhibit 305.22**

Using the CCTV footage from the Capitol building on January 6, 2021, in addition to locating Deborah in the Crypt, Agent Millett was able to locate Deborah Sandoval as she traveled through the Capitol. Deborah Sandoval entered the Capitol through the Senate Wing Doors, which are located on the northwest side of the Capitol, at approximately 2:49:47 p.m. Deborah Sandoval (highlighted with a yellow arrow below) is depicted entering in **Exhibit 102.1.**



**Exhibit 102.1**

Using the photographs recovered from her cellphone, Agent Millet was able track Deborah Sandoval throughout her time in Washington DC on January 6, 2021. Furthermore, as with the CCTV footage, Agent Millett was able to track her activities in the Capitol and when she eventually left the Capitol.

Shortly after entering, Deborah Sandoval (circled in red below) can be seen and heard on a video recovered from another rioter's cellphone. On the video, she can be heard yelling "get her ass out here." The government contends she is referring to getting Nancy Pelosi, the Speaker of the House, out of the House Chamber.



**Exhibit 107**

After entering the Senate Wing Doors, Deborah Sandoval paraded through the hallways of the Capitol, making her way to the Crypt. Agent Millett tracked Deborah Sandoval to the Crypt on CCTV footage. Deborah Sandoval also sent to a Facebook group photos and videos she took during the riot, including a video from inside the Capitol Crypt. Although Deborah

Sandoval does not show her face in her own video from the Crypt, Agent Millett was able to locate Deborah Sandoval on CCTV, and lined up the video with that CCTV footage. **Exhibit 103** is a still of the Crypt video sent by Deborah Sandoval synchronized with the CCTV. Comparing these videos makes clear that Deborah Sandoval is the person in the CCTV footage (circled in red below), taking the Crypt video.



**Exhibit 104.1**

Furthermore, the attire of the individual on the CCTV also matches the attire of Deborah in photos she had sent that day as well as photos recovered from her cellphone. **Exhibit 104.2** is a close up of Deborah Sandoval in the Crypt CCTV.



**Exhibit 104.2**

In addition to the Crypt video, Deborah Sandoval continued to take photographs once she was inside the Capitol. **Exhibit 305.17** is a "selfie" photograph of Deborah Sandoval in the Crypt at 3:02:26 p.m.



**Exhibit 305.17**

**Exhibit 104.3** is a screenshot from the CCTV footage of the Crypt at 3:02:26 p.m. which shows Deborah Sandoval taking that "selfie" photograph.



**Exhibit 104.3**

**Exhibit 104.5** is a side-by-side image of the CCTV footage and the metadata and selfie

photograph that Deborah Sandoval took at 3:02:26 p.m. in the Crypt.



**Exhibit 104.5**

Deborah Sandoval continued to take photographs during the time she was in the Capitol.

After leaving the Crypt, she took several photographs of the interior of Senator Jeff Merkley's

Office. **Exhibit 305.26** is a photograph she took of the interior of Senator Merkley's Office at 3:10:14 p.m.



**Exhibit 305.26**

Deborah Sandoval then returned to the Senate Wing Door hallway and left the Capitol through the Senate Wing Doors at 3:13:23 p.m. **Exhibit 102.2** is a still of Deborah Sandoval (highlighted with a yellow arrow) at approximately 3:13:23 p.m., when she left the Capitol building.



**Exhibit 102.2**

In the days and weeks following January 6, 2021, Deborah Sandoval sent a number of messages on her phone and through social media that are relevant to this case. For example, on January 6, 2021, at 9:13 p.m., Deborah Sandoval sent a Facebook message stating, "We stormed the cspioto [*sic*]." On January 14, 2021, she sent a message to a friend on Facebook inquiring about deleting pictures from the Capitol, including her previous trips to Washington, D.C. (**Exhibit 306.22** and **306.23**).  Deborah Sandoval was arrested on February 19, 2021.

### 2.   Salvador Sandoval's Conduct

On January 6, 2021, Salvador Sandoval entered the restricted grounds and entered through the East Rotunda Doors. **Exhibit 209.1** is a screenshot of a publicly available video (**Exhibit 208**) where Salvador Sandoval (circled in red) is seen standing outside of the East Rotunda Doors with other rioters yelling "Let us in." The East Rotunda Doors are damaged due to the actions of other rioters.



**Exhibit 209.1**

**Exhibit 202.6** is a still of Salvador Sandoval (highlighted with a yellow arrow) when he was just outside of the East Rotunda Doors as they were opened by the rioters at approximately 3:11:13 p.m.



**Exhibit 202.6**

Salvador Sandoval was then pushed back once the doors were forced open by rioters. Investigator revealed a Snapchat video from Salvador Sandoval just before entering the Capitol. Between 3:10 p.m. and 3:15 p.m., Salvador Sandoval recorded himself outside the East Rotunda Doors among a crowd of rioters (**EX 301).** During the video, he turns the camera from his face, showing the East Rotunda Doors which were forced open by rioters, and he stated, "We busting in." Additionally, during this time, the fire alarm can be heard over the sound of the rioters.[2]

Salvador Sandoval was then pushed out by rioters but eventually made his way into the Capitol Building at approximately 3:15:39 p.m. **Exhibit 202.1** is a still screenshot from CCTV of Salvador Sandoval (highlighted with a yellow arrow) pushing his way through other rioters in the East Foyer, as he made his way into the Rotunda.

---

[2] A search warrant was issued for Snapchat and revealed that the subscriber information from Snapchat shows that the account was created in 2015, that the email account associated with the account is salvadors.sandoval@yahoo.com.



**Exhibit 202.1**

Once inside the Rotunda, it is difficult to locate Salvador Sandoval on CCTV footage due to the type of lens and distance above the mob. However, he was identified on BWC footage and other rioters video footage. **Exhibit 213** is a video recovered from another rioter. **Exhibit 214.5** is a screenshot from **Exhibit 213**. It shows Salvador Sandoval (circled in red) in the Rotunda as he pushes against officers as they protect the Capitol.



**Exhibit 214.5**

**Exhibit 204.1** is a screenshot from MPD Officer Martha Lazo's BWC on January 6, 2021, at approximately 3:18:18 p.m. Salvador Sandoval (circled in red) can be seen through the police shield that Officer Lazo is using in her official duties.



**Exhibit 204.1**

In **Exhibit 204.2** Salvador Sandoval's left hand is circled in red at approximately 3:18:21 p.m., as he pulls the police shield which is being used by Officer Lazo (as charged in Count 2 of the Superseding Indictment).



**Exhibit 204.2**

21

After struggling with Office Lazo over the police shield, Salvador Sandoval eventually exited the Rotunda and went back into the East Foyer.

While in the East Foyer, Salvador Sandoval initiated altercations with several additional officers. **Exhibit 202.2** is a screenshot from CCTV of one of those altercations (as charged in Count 3 of the Superseding Indictment) at approximately 3:25:10 p.m. (Salvador Sandoval is highlighted with a yellow arrow).



**Exhibit 202.2**

Salvador Sandoval then continued to assault other Officers as they were performing their official duties on January 6, 2021. In **Exhibit 202.3** Salvador Sandoval (highlighted with a yellow arrow) is seen assaulting MPD Office Choi (as is charged in Count 4 of the Superseding Indictment), as captured by CCTV footage at two different angles at approximately 3:25:15 p.m.



**Exhibit 202.3**

**Exhibit 204.4** is a still shot of one of the Government's witnesses, MPD Officer Kyle Gatewood's, BWC footage. Officer Gatewood was standing behind Salvador Sandoval (circled in red) and MPD Officer Choi, during Salvador Sandoval's assault of Officer Choi.



**Exhibit 204.4**

**Exhibits 204.5 and Exhibit 204.26** are screenshots from the BWC of MPD Officer Mendoza as Salvador Sandoval (circled in red) and other rioters attempt to take the police shield that Officer Mendoza was using in his official duties of protecting the Capitol (as charged in Count 5 of the Superseding Indictment).



**Exhibit 204.5**



**Exhibit 204.26**

**Exhibit 202.4** is CCTV footage of this assault as charged in Count 5 of the Superseding Indictment at approximately 3:27:50 p.m. (with Salvador Sandoval highlighted with a yellow arrow).



**Exhibit 202.4**

Salvador Sandoval was arrested on February 19, 2021. When his home was searched, subject to a search warrant, several items were recovered including electronic devices, a gray Nike sweatshirt, a stocking cap, and a black Michael Kors jacket. A search of his cell phone revealed several text messages and social media messages, including a SnapChat conversation between Salvador Sandoval, as Snapchat username "uwantme4ever," and "Tori Mixon" on January 7, 2021, at 12:10:19 AM. In this Snapchat message "Tori Mixon" wrote, "that's cool as hell what are your thoughts on the situation with someone actually being in the mist of it." Salvador responded "It's sad that it had to come to this but our country is incredibly corrupt. Sad that a girl was killed and people were hurt but otherwise it was amazing."

Some of the messages recovered from Salvador Sandoval's cellphone were between him and Deborah Sandoval (identified as "mom" in his messages) on January 6, 2021, while they were both at the Capitol. **Exhibit 310.4** is messages sent between Deborah Sandoval and Salvador Sandoval, recovered from Salvador Sandoval's cellphone, starting at 12:54:23 (UTC -6). The

Sandovals are from Iowa, which is in the Central Standard Time zone, 12:54:23 p.m. CST is 1:54:23 p.m. EST[3]. For example, the first message in Exbibit 310.4 below would have been sent from Deborah Sandoval to Salvador Sandoval at 12:54 p.m. EST.



**Exhibit 310.4**

After she left the Capitol, Deborah Sandoval continued to communicate with Salvador Sandoval. **Exhibit 310.2** is another set of messages between Deborah and Sandoval.

---

[3] UTC -6 is the Central Standard Time zone, which is one hour behind eastern standard time.



**Exhibit 310.2**

At 3:21:59 p.m., Salvador Sandoval can be seen at the same time on CCTV (highlighted below with a yellow arrow) sending that reply text message.



**Exhibit 202.5**

After assaulting several officers between 3:18 p.m. and 3:27 p.m., Salvador Sandoval was pushed out of the Capitol by police officers at 3:30 p.m. After being removed from the Capitol, Salvador Sandoval recorded another SnapChat video.[4] During the video he stated, "Got pepper sprayed in the face and mouth…Got out cause I could hear a break, and there's still people inside."

---

[4] A search warrant was issued for Snapchat and revealed that the subscriber information from Snapchat shows that the account was created in 2015, that the email account associated with the account is salvadors.sandoval@yahoo.com.

Salvador and Deborah Salvador remained on Capitol Grounds and, consistent with their messages coordinating a meeting, took a photograph together at 3:45 p.m.



**Exhibit 111**

### III.    Elements of the Crimes Alleged

The Superseding Indictment charges Salvador Sandoval with one offense under 18 U.S.C. § 231(a)(3); three offenses under 18 U.S.C. § 111(a)(1); one offense under 18 U.S.C. §§ 1512(c)(2) and 2; one offense under 18 U.S.C. § 1752(a)(4); and one offense under 40 U.S.C. § 5104(e)(2)(F). The Superseding Indictment charges Salvador and Deborah Sandoval with two offenses under 18 U.S.C. § 1752 and two offenses under 40 U.S.C. § 5104.  The elements of those offenses as charged in the Superseding Indictment are as follows:

1. **Civil Disorder**[5]

Count One of the Superseding Indictment charges the defendant, Salvador Sandoval, with civil disorder, in violation of 18 U.S.C. § 231(a)(3). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

    a.  First: Salvador Sandoval knowingly committed an act or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

    b.  Second: at the time of the Salvador Sandoval's actual or attempted act, the law enforcement officer or officers were engaged in the lawful performance of their official duties' incident to and during a civil disorder.

    c.  Third: the civil disorder in any way or degree obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident.

The term "civil disorder" means any public disturbance involving acts of violence by groups of three or more persons, which (a) causes an immediate danger of injury to another individual, (b) causes an immediate danger of damage to another individual's property, (c) results in injury to another individual, or (d) results in damage to another individual's property.

---

[5] Instructions and elements are drawn from the instructions proposed in the pretrial statement. *See* ECF 83, Attachment 1. Source for instruction: (18 U.S.C. § 231(a)(3); *United States v. Thomas Webster*, 21-cr-32-APM, ECF No. 101, at 15-18 (D.D.C. August 2, 2022); *United States v. Guy Wesley Reffitt*, 21-cr-208-DLF, ECF No. 65, at 2, 8-11 (D.D.C. November 24, 2021); *United States v. Pugh*, 20-cr-73 (S.D. Ala. May 19, 2021); *United States v. Rupert*, No. 20-cr-104 (D. Minn. Mar. 12, 2021) (ECF No. 81)).

The term "commerce" means commerce or travel between one state, including the District of Columbia, and any other state, including the District of Columbia. It also means commerce wholly within the District of Columbia.

The term "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.

The term "department" includes executive departments. The Department of Homeland Security, which includes the United States Secret Service, is an executive department.

The term "agency" includes any department, independent establishment, commission, administration, authority, board, or bureau of the United States.

For the U.S. Capitol Police and Metropolitan Police Departments, the term "official duties," means policing the U.S. Capitol Building and Grounds, and enforcing federal law and D.C. law in those areas.

## 2. Assaulting, Resisting, or Impeding Certain Officers[6]

In the second through fifth counts of the Superseding Indictment, Salvador Sandoval is charged with assaulting, resisting, opposing, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

a. First: Salvador Sandoval assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer from the Metropolitan Police Department at 3:18 p.m. (count 2); 3:25 p.m. (count 3); 3:25 p.m. (count 4); and 3:28 p.m. (count 5)

---

[6] Instructions and elements are drawn from the instructions proposed in the pretrial statement. *See* ECF 83, Attachment 1. Source for instruction: (18 U.S.C. § 111(a)(1); 2 O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions § 24:03 (6th ed.); *United States v. Feola*, 420 U.S. 671, 684 (1975); *United States v. Arrington*, 309 F.3d 40, 44-45 (D.C. Cir. 2002)).

b.   Second: Salvador Sandoval did such act forcibly.

c.   Third: Salvador Sandoval did such act intentionally.

d.   Fourth: the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was any person assisting an officer or an employee of the United States who was then engaged in the performance of his official duties.

e.   Fifth:  Salvador Sandoval made physical contact with the federal officer or acted with the intent to commit a Civil Disorder, as defined in Count One, or Obstruction of an Official Proceeding and Aiding and Abetting, as defined in Count Six.

The term "assault" means any intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so.  A finding that one used force (or attempted or threatened to use it) isn't the same as a finding that he attempted or threatened to inflict injury.  In order to find that the defendant committed an "assault," you must find beyond a reasonable doubt that the defendant acted forcibly, and that the defendant intended to inflict or intended to threaten injury.

The terms "resist," "oppose," "impede," "intimidate," and "interfere with" carry their everyday, ordinary meanings.

### 3.   Obstruction of an Official Proceeding and Aiding and Abetting[7]

In the sixth count of the Superseding Indictment, Salvador Sandoval is charged with corruptly obstructing an official proceeding, in violation of 18 U.S.C. § 1512(c)(2),or aiding and abetting a violation of 18 U.S.C. § 1512(c)(2), 2.   In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

  a.   First:  Salvador Sandoval attempted to or did obstruct or impede an official proceeding.

  b.   Second: Salvador Sandoval intended to obstruct or impede the official proceeding.

  c.   Third:  Salvador Sandoval acted knowingly.

  d.   Fourth:  Salvador Sandoval acted corruptly.

The term "official proceeding" includes a proceeding before the Congress.  The official proceeding need not be pending or about to be instituted at the time of the offense.  If the official proceeding was not pending or about to be instituted, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to Salvador Sandoval. As used in Count Six, the term "official proceeding" means Congress's Joint Session to certify the Electoral College vote.

---

[7] Instructions and elements are drawn from the instructions proposed in the pretrial statement. *See* ECF 83, Attachment 1. Source for instruction: (18 U.S.C. §§ 1512(c)(2), 2; *United States v. Reffitt*, No. 1:21-cr-32, 2022 WL 712844 (D.D.C.), Final Jury Instructions at 25, ECF No. 119; *United States v. Robertson*, No. 1:21-cr-34, 2022 WL 1101660 (D.D.C.), Final Jury Instructions at 12, ECF No. 86; *United States v. Hale-Cusanelli*, No. 1:21cr37, 2022 WL 1731979 (D.D.C.), Final Jury Instructions at 24, ECF No. 84 (language slightly different from the standard, but same four elements); *United States v. Bledsoe*, No. 1:21-cr-204, Final Jury Instructions at 6-7, ECF No. 215; and *United States v. Williams*, No. 1:21-cr-377, Final Jury Instructions at 6-7, ECF No. 112 (language slightly different from the standard, but same four elements).

The term "knowingly" has the same meaning described in the instructions for Count One. To act "corruptly," Salvador Sandoval Jr. must use unlawful means or have a wrongful or an unlawful purpose, or both.   The defendant must also act with "consciousness of wrongdoing."  "Consciousness of wrongdoing" means with an understanding or awareness that what the person is doing is wrong or unlawful.

**Attempt**

In Count Six, Salvador Sandoval is also charged with attempt to commit the crime of obstruction of an official proceeding.  An attempt to commit obstruction of an official proceeding is a crime even if the defendant did not actually complete the crime of obstruction of an official proceeding.

In order to find Salvador Sandoval guilty of attempt to commit obstruction of an official proceeding, you must find that the government proved beyond a reasonable doubt each of the following two elements:

    a.  First: that Salvador Sandoval intended to commit the crime of obstruction of an official proceeding, as I have defined that offense above.

    b.  Second: that Salvador Sandoval took a substantial step toward committing obstruction of an official proceeding which strongly corroborates or confirms that he intended to commit that crime.

**Aiding and Abetting**

In this case, the government further alleges that Salvador Sandoval aided and abetted others in committing obstruction of an official proceeding as charged in Count Six.  A person may be guilty of an offense if he aided and abetted another person in committing the offense.  A person who has aided and abetted another person in committing an offense is often called an

accomplice.  The person whom the accomplice aids and abets is known as the principal.  It is not necessary that all the people who committed the crime be caught or identified.  It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone, and that the defendant knowingly and intentionally aided and abetted that person in committing the crime.

In order to find Salvador Sandoval Jr. guilty of obstruction of an official proceeding because he aided and abetted others in committing this offense, the following elements must be proven by the government:

a.  First:  that others committed obstruction of an official proceeding by committing each of the elements of the offense charged, as I have explained above.

b.  Second: that Salvador Sandoval knew that obstruction of an official proceeding was going to be committed or was being committed by others.

c.  Third:  that Salvador Sandoval performed an act or acts in furtherance of the offense.

d.  Fourth:  that Salvador Sandoval knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or in committing the offense of obstruction of an official proceeding.

e.  Fifth: that Salvador Sandoval did that act or acts with the intent that others commit the offense of obstruction of an official proceeding.

### 4.  Entering and Remaining in a Restricted Building or Grounds[8]

The seventh count of the Superseding Indictment charges both defendants with entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1). In order

---

[8] Instructions and elements are drawn from the instructions proposed in the pretrial statement. *See* ECF 83, Attachment 1. Source for instruction: 18 U.S.C. § 1752(a)(1).

to find the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

a. First: that the defendant entered or remained in a restricted building or grounds without lawful authority to do so; and

b. Second, that the defendant did so knowingly.

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

The term "knowingly" has the same meaning described in the instructions for Count 1.

### 5. Disorderly or Disruptive Conduct in a Restricted Building or Grounds

The eighth count of the Superseding Indictment charges both of the defendants with disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2). In order to find the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

a. First: that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

b. Second: that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

c. Third: that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

"Disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances or interferes with another person by jostling against or unnecessarily crowding that person.

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.

The term "knowingly" has the same meaning described in the instructions for Count One.

The term "restricted building or grounds" and "knowingly" have the same meanings described in the instructions for Count Seven.

### 6. Engaging in Physical Violence in a Restricted Building or Grounds[9]

The ninth count of the superseding Indictment charges Salvador Sandoval with engaging in an act of physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

    a. First:  that the defendant engaged in any act of physical violence against any person in any restricted building or grounds.

    b. Second: that the defendant did so knowingly.

The term "knowingly" has the same meaning described in the instructions for Count One.

The term "restricted building or grounds" has the same meanings as described in the instructions for Count Seven.

---

[9] Instructions and elements are drawn from the instructions proposed in the pretrial statement. *See* ECF 83, Attachment 1. Source for instruction: 18 U.S.C. § 1752(a)(4).

The term "act of physical violence" means any act involving an assault or other infliction or threat of infliction of death or bodily harm on an individual, or damage to, or destruction of, real or personal property.

### 7.   Disorderly Conduct in a Capitol Building[10]

The tenth count of the Superseding Indictment charges both of the defendants with disorderly and disruptive conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D). In order to find the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

    a.  First: that the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings.

    b.  Second: that the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or House of Congress.

    c.  Third: that the defendant acted willfully and knowingly.

The term "United States Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.

The term "disorderly or disruptive conduct" has the same meaning described in the instructions for Count Eight defining "disorderly conduct" and "disruptive conduct."

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law.  "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.

The term "knowingly" has the same meaning described in the instructions for Count One.

---

[10] Instructions and elements are drawn from the instructions proposed in the pretrial statement. *See* ECF 83, Attachment 1. Source for instruction: 40 U.S.C. § 5104(e)(2)(D). Defense source for objection: 40 U.S.C. § 5104(e)(2)(D); *United States v. Dustin Byron Thompson*, No. 1:21-cr-161 (RBW), Final Jury Instructions at 36, ECF No. 83.

### 8.  Parading, Demonstrating, or Picketing in a Capitol Building[11]

The eleventh count of the Superseding Indictment charges both of the defendants with parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). In order to find the defendants guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

    a.  First, that the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

    b.  Second, that the defendant acted willfully and knowingly.

The term "parade" means to take part in a march or procession, organized on a grand scale, in support of some political object.

The term "demonstrate" means to take part in a public manifestation, by a number of persons, of interest in some public question, or sympathy with some political or other cause; usually taking the form of a procession and mass-meeting.

The term "picket" means to be posted for a demonstration or protest. The terms "United States Capitol Buildings," "knowingly," and "willfully" have the same meanings described in the instructions for Counts One and Ten.

The terms "United States Capitol Buildings" and "knowingly" have the same meanings described in the instructions for Counts One and Three.

---

[11] Instructions and elements are drawn from the instructions proposed in the pretrial statement. *See* ECF 83, Attachment 1. Source for instruction: 40 U.S.C. § 5104(e)(2)(G); *United States v. Russell Dean Alford*, No. 1:21-cr-263 (TSC), Final Jury Instructions at 17, ECF No. 91 (Instructions are not dockets, but counsel can provide them).

### 9.  Act of Physical Violence in the Capitol Grounds or Buildings[12]

The twelfth count of the Superseding Indictment charges Salvador Sandoval with engaging in an act of physical violence in the Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F). In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

    a.   First:  that the defendant engaged in any act of physical violence in any of the United States Capitol Buildings or Grounds.

    b.   Second: that the defendant acted willfully and knowingly.

The terms "United States Capitol Buildings," "knowingly," "act of physical violence," and "willfully" have the same meanings described in the instructions for Counts Six, Nine, and Ten.

## IV.   THE PARTIES' EVIDENCE AND ANTICIPATED DEFENSES

The parties are mutually committed to trying the case expeditiously and without lengthy arguments about objections. The government has met and conferred with defense counsel about the evidence it plans to present. Based on that meeting, the government expects that all of its evidence will be admitted without objection. Likewise, based on defense counsel's representations about their plans for trial, the government expects that it would not object to the defendant's exhibits. The government may nonetheless object to particular questions about exhibits.

The government expects that both Deborah Sandoval and Salvador will focus on their actions and their *mens rea*.

---

[12] Instructions and elements are drawn from the instructions proposed in the pretrial statement. *See* ECF 83, Attachment 1. Source for instruction: 40 U.S.C. § 5104(e)(2)(F).

## V.      CONCLUSION

The defendants. Deborah and Salvador Sandoval, joined the mob of rioters that entered the U.S. Capitol building on January 6, 2021. They were present where they should not have been, lent their presence to the mob, and in doing so interfered with law enforcement's ability to do their job and secure the Capitol building. Furthermore, Salvador Sandoval further obstructed and impeded MPD officers in their official duties as he violently struggled with multiple officers as they were attempting to control the rioters. Both Deborah and Salvador Sandoval were angry and persistent on January 6, 2021. They were intent on disrupting Congress. Salvador Sandoval was violent in his actions during this civil disorder. At trial, the evidence will prove that both defendants acted with knowledge while they were at the Capitol on January 6, 2021, and the government will prove their guilt beyond a reasonable doubt.

Date: December 9, 2022

Respectfully Submitted,
MATTHEW M. GRAVES
United States Attorney

By: */s/ Brian Brady*
Brian Brady
Trial Attorney, Department of Justice
DC Bar No. 1674360
1301 New York Ave. N.W., Suite 800
Washington, DC 20005
(202) 834-1916
Brian.Brady@usdoj.gov

*/s/ Holly F. Grosshans*
Holly F. Grosshans
Assistant United States Attorney
D.C. Bar No. 90000361
DC USAO
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-6737
Holly.Grosshans@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

On this 9th day of December 2022, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.


<u>*/s/ Holly Grosshans*</u>
Holly Grosshans
Assistant United States Attorney


<u>*/s/ Brian Brady*</u>
Brian Brady
Trial Attorney